UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLOBALPRIVATEQUITY.COM, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 24-11481-FDS |
| ) | |
| THE DEBT EXCHANGE, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, C.J.**

This is an action for patent infringement. Plaintiff Globalprivatequity.com, Inc. ("GPE") has sued defendant The Debt Exchange, Inc. ("DebtX") asserting claims under 35 U.S.C. § 271 for infringing three of its patents. The patents at issue concern a digital system for monitoring and transacting in securities not listed on traditional exchanges.

DebtX has moved to dismiss the complaint for failure to state a claim upon which relief can be granted. It contends that each asserted patent is directed to patent-ineligible subject matter under 35 U.S.C. § 101.

For the following reasons, that motion will be granted.

**I.      Background**

   **A.      Factual Background**

The facts are stated as set forth in the complaint unless otherwise noted.

      **1.      The Parties**

GPE is a Delaware corporation based in Pennsylvania. (Compl. ¶ 3). DebtX is a

Delaware corporation based in Massachusetts. (*Id.* ¶ 4). It owns and manages an online trading platform for syndicated mortgage loans, a type of security not traded on traditional exchanges. (*Id.* ¶ 12). The platform includes tools for evaluating those securities. (*Id.*).

### 2. Patents in Suit

The complaint alleges that the platform used by DebtX infringes three patents owned by GPE: U.S. Patent No. 7,526,444 ("the '444 patent"), U.S. Patent No. 7,877,319 ("the '319 patent"), and U.S. Patent No. 8,694,418 ("the '418 patent"). (*Id.* ¶ 2). The patents each concern "a digital system for monitoring and transacting in securities not listed on traditional exchanges." (*Id.* ¶¶ 9-11, 28, 47, 66).

#### a. The '444 Patent

The '444 patent is titled "Integrated Trading Information Processing and Transmission for Exempt Securities," and was filed June 3, 2005. ('444 patent at Title). The patent concerns "full digital sourcing, delivery, reporting and settlement for all alternative and exempt assets." (*Id.* col. 2 ll. 5-6). It states that it is "directed to a financial trading information processing and transmission system" and that, under prior art, pricing and trading of alternative assets was not standardized, efficient, or transparent. (*Id.* col. 1 ll. 18-19, 31-67).

The claimed invention is "a system for processing and transmitting trading information" that involves four modules:

> (a) a risk analytic module using the latest market prices and data provided by the other two modules, (b) an auction module comprising a private asset auction functionality and a two way trader workstation capability, with bid-offer and unique asset price sourcing capabilities, (c) an asset or portfolio tracking module to provide browser based, real-time consolidated reporting of multi-firm asset positions (public or private), and (d) an out-of-band communications module which alerts users/subscribers who may or may not be logged on the system via fax, email, or text messages of a pending transaction being consummated or achieved

(*Id.* col. 2 ll. 9-21). According to the patent, this system relies on "a computer network enabling

2

communication between a host computer and a plurality of remote bidders and sellers," as well as trade and account managers, and financial databases of inventory and bids. (*Id.* col. 2 ll. 31-52).

The patent identifies its preferred embodiment as a "interactive electronic trading information processing and transmission system" that "may be used for trading exempt securities comprising whole loan pools on both a bulk and a flow basis . . . through either a bid/ask process or a standing buy order." (*Id.* col. 6 ll. 27-30, 35). In addition to loan pools, this system would allow "trading exempt securities" generally, including in assets like "artwork, one-of-a-kind collectables, antiques" and "like-kind exchanges." (*Id.* col. 6 ll. 41, 58-60).

The patent includes two independent claims, Claim 1 and Claim 21. The complaint alleges infringement of Claim 21. DebtX contends that Claim 1 is representative of all claims the complaint asserts, including claims of the '319 and '418 patents, discussed below.

Claim 1 is as follows:

> A system for monitoring and transacting exempt securities or assets not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities via a global information network, comprising:
>
> memory for storing software and a processor for executing the software;
>
> an asset analytic software module for statistically analyzing at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities based upon a model selected by a user or a price data source selected by the user from a price data database;
>
> an asset track software module for collecting at least one of price data, valuation data, and market data related to the at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities asset being analyzed;
>
> an asset information communication software module for providing the user inventory data of exempt securities or assets not otherwise listed, traded,

>
> valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities available to the user, accepting a selection of the at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities from the user, providing the user at least one of the price data, the valuation data, and the market data related to the at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities from the asset track software module, interfacing with the asset analytic software module for statistically analyzing the at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities, and providing the user a result of the statistical analysis related to the at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities; and
>
> an asset access software module for providing transactional access to conduct at least one of bidding to buy, offering to sell and auctioning transactions in connection with the at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities being analyzed.

(*Id.* col. 20 l. 43 – col. 21 l. 27).

Claim 21 is as follows:

> A method for monitoring and transacting exempt securities or assets not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities via a global information network, comprising the steps of:
>
> statistically analyzing by a computer at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities based upon a model selected by a user or a price data source selected by the user from a price data database;
>
> collecting by a computer at least one of price data, valuation data, and market data related to the at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities being analyzed;
>
> providing the user by a computer, inventory data of exempt securities or assets not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities

4

>   available to the user, accepting a selection of the at least one exempt
>   security or asset not otherwise listed, traded, valuated or bought/sold in
>   any conventional exchange or system for the regulation of securities or
>   commodities from the user, providing the user at least one of the price
>   data, the valuation data, and the market data related to the at least one
>   exempt security or asset not otherwise listed, traded, valuated or
>   bought/sold in any conventional exchange or system for the regulation of
>   securities or commodities, and providing the user a result of the statistical
>   analysis related to the at least one exempt security or asset not otherwise
>   listed, traded, valuated or bought/sold in any conventional exchange or
>   system for the regulation of securities or commodities; and
>
>   providing by a computer transactional access to conduct at least one of
>   bidding to buy, offering to sell and auctioning transactions in connection
>   with the at least one exempt security or asset not otherwise listed,
>   valuated or bought/sold in any conventional exchange or system for the
>   regulation of securities or commodities asset being analyzed.

(*Id.* col. 22 l. 65 – col. 23 l. 39).

### b. The '319 Patent

The '319 patent, like the '444 patent, is titled "Integrated Trading Information Processing and Transmission System for Exempt Securities." ('319 patent at Title). It was filed March 13, 2009. (*Id.*). Its specification is essentially identical to that of the '444 patent. It differs only in the language of its asserted claims, and even so, the claims are very similar. (*Id.* cols. 1-24).

The patent includes two independent claims, Claim 1 and Claim 22. The complaint asserts that DebtX infringed Claim 22.

Claim 22 provides as follows:

>   A method for monitoring and transacting exempt securities or assets not
>   otherwise listed, traded, valuated or bought/sold in any conventional exchange
>   or system for the regulation of securities or commodities via a global
>   information network, comprising the steps of:
>
>   statistically analyzing, by a computer, at least one exempt security or asset not
>   otherwise listed, traded, valuated or bought/sold in any conventional
>   exchange or system for the regulation of securities or commodities based
>   upon a model selected by a user or a price data source selected by the user
>   from a price data database;

> collecting, by a computer, at least one of price data, valuation data, and market data related to the at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities being analyzed;
>
> providing the user, by a computer, inventory data of exempt securities or assets not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities available to the user, accepting a selection of the at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities from the user, providing the user at least one of the price data, the valuation data, and the market data related to the at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities, and providing the user a result of the statistical analysis related to the at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities or an algorithmically produced potential bid/offer match for the at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities; and
>
> providing, by a computer, transactional access to conduct at least one of bidding to buy, offering to sell and auctioning transactions in connection with the at least one exempt security or asset not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities asset being analyzed or the at least one exempt security or asset not otherwise listed, traded, valuated or bought/ sold in any conventional exchange or system for the regulation of securities or commodities that are part of the algorithmically produced potential bid/offer match.

(*Id.* col. 22 l. 65 – col. 24 l. 15).

### c.     The '418 Patent

The '418 patent is also titled "Integrated Trading Information Processing and Transmission System for Exempt Securities." ('418 patent at Title). It was filed on July 9, 2013. (*Id.*) Its specification is identical to the specifications of the '444 and '319 patents. (*Id.* cols. 1-24). Its claims are also very similar to those of the '444 and '319 patents.

6

The patent includes two independent claims, Claim 1 and Claim 18.  The complaint asserts that DebtX infringed Claim 1.

Claim 1 provides as follows:

> A method for monitoring and/or transacting, via an electronic network, exempt securities or assets not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities comprising the steps of:
>
> analyzing, using a microprocessor, at least one of the exempt securities or assets not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities;
>
> collecting, using a microprocessor, data related to the at least one of the exempt securities or assets not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities being analyzed;
>
> accepting from a first user, using a microprocessor, information regarding a new offer to buy or sell the at least one of the exempt securities or assets not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities;
>
> posting, using a microprocessor, the new offer to buy or sell the at least one of the exempt securities or assets not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities for viewing by at least one user of the electronic network;
>
> querying, using a microprocessor, one or more financial inventory databases of pending offers to buy or sell one or more of the exempt securities or assets not otherwise listed, traded, valuated or bought/sold in any conventional exchange or system for the regulation of securities or commodities to determine whether one or more of the pending offers to buy or sell match the new offer to buy or sell accepted from the first user;
>
> automatically transmitting a notification, upon finding a match, using a microprocessor, to one or more second users of the electronic network associated with the one or more pending offers to buy or sell of the match based upon notification preferences defined by the one or more second users;
>
> storing, using a microprocessor, the new offer to buy or sell the at least one of the exempt securities or assets not otherwise listed, traded, valuated or

> bought/sold in any conventional exchange or system for the regulation of securities or commodities in at least one of a bid data base and the financial inventory database; and
>
> providing, using a microprocessor, transactional access to conduct a sale or transfer of the at least one of the exempt securities or assets not otherwise listed, traded, valued or bought/sold in any conventional exchange or system for the regulation of securities or commodities associated with the new offer to buy or sell.

(*Id.* col. 20 l. 65 – col. 21 l. 49).

### B. Procedural Background

On June 6, 2024, GPE filed this action against DebtX. (ECF 1). The complaint asserts three counts under 35 U.S.C. § 271: infringement of Claim 21 of the '444 patent (Count 1); infringement of Claim 22 of the '319 patent (Count 2); and infringement of Claim 1 of the '418 patent (Count 3).

DebtX has moved to dismiss the complaint for failure to state a claim upon which relief can be granted. It contends that each asserted patent is directed to patent-ineligible subject matter under 35 U.S.C. § 101.

## II. Legal Framework

### A. Legal Standard

To survive a motion to dismiss, a complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally*

*Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Whether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is an issue of law. *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). Courts may therefore decide the issue of § 101 patent-eligibility at the pleadings stage. *See, e.g.*, *Rothschild Digital Confirmation, LLC v. Skedulo Holdings Inc.*, 2020 WL 1307016, at *2 (N.D. Cal. Mar. 19, 2020). But "like many legal questions," determining eligibility under § 101 can involve "subsidiary fact questions"—in particular, the second step of the *Alice/Mayo* test, which asks whether a patent's claims contain a sufficiently inventive concept. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). Thus, while the Federal Circuit has held that "patent eligibility can be determined at the Rule 12(b)(6) stage," it has also cautioned that "[t]his is true only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Id.* at 1125.

B.     **Statutory Framework**

An invention is generally patentable if it qualifies as a "new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. However, "this provision contains an important implicit exception. Laws of nature, natural phenomena, and abstract ideas are not patentable." *Mayo Collaborative Servs. v. Prometheus Labs. Inc.*, 566 U.S. 66, 70 (2012) (internal quotation marks and citations omitted). When applying that exception, a court "must distinguish between patents that claim the building blocks of human ingenuity and those that

integrate the building blocks into something more." *Alice Corp. v. CLS Bank Intern.*, 573 U.S. 208, 217 (2014) (internal quotation marks, alterations, and citations omitted).

The framework for making that distinction comprises two steps. At step one, the court determines "whether the claims at issue are directed to one of those patent-ineligible concepts" that is so abstract as to "risk disproportionately tying up the use of [] underlying ideas." *Id.* at 217 (quoting *Mayo*, 566 U.S. at 73). If the claims at issue are directed to a patent-ineligible concept, the court continues to step two. *See id.* At step two, the court looks for an "inventive concept," namely "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (internal quotation marks, alterations, and citations omitted). If the claims lack an inventive concept, then the patent claims subject matter that is not patent-eligible, and the claims are therefore invalid.

### III.    Analysis

#### A.    Representative Claim

As an initial matter, the Court must determine which claims are representative—that is, which claims are the proper focus of analysis in order to resolve the pending motion. DebtX contends that Claim 1 of the '444 patent is representative not just of the '444 patent claim, but also of the '319 and '418 patent claims.

"Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citing *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 & n.9 (Fed. Cir. 2016)). In the context of

challenges to patent eligibility under § 101, claims are representative if they are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)

The parties have not agreed to treat Claim 1 of the '444 patent as representative of the asserted claims. However, GPE makes no argument that Claim 21 of the '444 patent should be treated as distinct from Claim 1 of the '444 patent. It makes a general claim that the '319 patent ought to be treated distinctly from the '444 patent, but in support points only to verbatim overlap between the two patents. (ECF 12 at 13-14). Accordingly, the Court will treat the representativeness issue as conceded as to those two asserted claims. *See Berkheimer*, 881 F.3d at 1365.

DebtX has also clearly demonstrated that Claim 1 of the '418 patent possesses no limitation distinct from those of Claim 1 of the '444 patent. As an initial matter, and as DebtX indicates, the specification for each of the patents is identical, and there appears to be substantial overlap between the asserted claims. In response, GPE points to a set of limitations in Claim 1 of the '418 patent it contends are distinct from limitations found in Claim 1 of the '444 patent. Specifically, it contends that there is no analog to the "posting," "querying," "automatically transmitting," and "storing" limitations from '418 Claim 1 in '444 Claim 1. But that assertion is entirely bare and unpersuasive.

The "posting" limitation from '418 Claim 1 can be mapped directly to the "asset access" limitation of '444 Claim 1. *Compare* '418 Patent, col. 21 ll. 18-23 ("posting, using a microprocessor, the new offer to buy or sell . . . for viewing by at least one user of the electronic network") *with* '444 Patent, col. 21, ll. 21-23 ("providing transactional access to conduct at least one of bidding to buy, offering to sell and auctioning transactions"). Similarly, the "querying"

11

limitation from '418 Claim 1 can be mapped onto parts of both the "asset access" and "asset information" limitations of '444 Claim 1. *Compare* '418 Patent, col. 21 ll. 24-31 ("querying, using a microprocessor, one or more financial inventory databases of pending offers to buy or sell . . . to determine whether one or more of the pending offers to buy or sell match the new offer to buy or sell accepted from the first user") *with* '444 Patent col. 20 l. 64 – col. 21 l. 6 ("providing the user inventory data of [securities]. . . accepting a selection of the [security] from the user, providing the user at least one of the price data, the valuation data, and the market data related to the [security]") *and* '444 Patent col. 21 ll. 21-23 ("providing transactional access to conduct at least one of bidding to buy, offering to sell and auctioning transactions").

The "storing" limitation from '418 Claim 1 is cross-hatched from the limitations of '444 Claim 1. *Compare* '418 Patent, col. 21 ll. 38-43 ("storing, using a microprocessor, the new offer to buy or sell . . . in at least one of a bid database and the financial inventory database") *with* '444 Patent col. 20 ll. 48-49, col. 21 ll. 21-23 ("memory for storing software and a processor for executing the software," including software that "provid[es] transactional access to conduct at least one of bidding to buy, offering to sell and auctioning transactions").

Finally, the "automatically transmitting" limitation of the '418 patent is not meaningfully distinct from the "asset access" limitation of the '444 patent. Because notifications are ordinarily automatic unless they are delayed or batched, the "automatic" nature of the notification contemplated by '418 Claim 1 does not differ materially from the "notification function to notify a user in connection with a matching offer to sell, bid to buy or auction high bid" contemplated as part of the asset access module in '444 Claim 1. *See* '418 Patent col. 21 ll. 32-37; '444 Patent col. 21 ll. 21-27, col. 22 ll. 4-8.

Accordingly, because GPE "does not present any meaningful argument for the distinctive

significance of any claim limitations not found in the representative claim[s]," the Court will treat Claim 1 of the '444 patent as representative of Claim 21 of the '444 patent, Claim 22 of the '319 patent, and Claim 1 of the '418 patent.  *Berkheimer*, 881 F.3d at 1365.

### B. Patent Eligibility

DebtX contends that GPE's infringement claims fail as a matter of law because Claim 1 of the '444 patent, as representative of the asserted claims in the '444, '319, and '418 patents, is not patent-eligible.  DebtX asserts principally that monitoring and transacting in securities not listed on traditional exchanges is an abstract idea, and that GPE's patents add only generic computer functionality to this idea, which is insufficiently inventive to make the idea patent-eligible.

#### 1. Step One:  Patent-Ineligible Concept

DebtX contends that Claim 1 of the '444 patent is directed to the abstract idea of "monitoring and transacting in securities not listed on a conventional exchange."  (ECF 11 at 14).  GPE characterizes all three of the asserted patents using that same language, but contends that the concept is patent-eligible because it is "an advance in computerized trading of exempt securities" and because it creates "functionality that was not provided under prior art."  (ECF 12 at 10, 11).

The Supreme Court has repeatedly held that "fundamental economic practice[s] long prevalent in our system of commerce" are patent-ineligible abstract ideas.  *Bilski v. Kappos*, 561 U.S. 593, 611 (2010) (holding that a patent describing a method for hedging financial risk was directed to an abstract idea); *see Alice*, 573 U.S. at 221 (holding that a patent describing a method of intermediated settlement and digital system for implementing it was directed to an abstract idea).  Conventional business practices, especially those fundamental enough to be "taught in any introductory finance class," are "squarely within the realm of 'abstract ideas.'"

*Alice*, 573 U.S. at 221.  The fact that a patent limits a conventional business practice to a particular subset of possible applications does not alter its character as an abstract idea.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) ("Although certain additional limitations, such as consulting an activity log, add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content."); *cf. Elec. Power Grp.,* 830 F.3d at 1353 ("[W]e have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas.").  Similarly, "generic computer implementation" of an abstract idea "fail[s] to transform that abstract idea into a patent-eligible invention."  *Alice*, 573 U.S. at 221.

Claim 1 of the '444 patent is, on its face, directed to the idea of an exchange—that is, a centralized location for buyers and sellers to meet and conduct transactions.  That is the type of fundamental business practice deemed patent-ineligible in *Bilski* and *Alice*.  The claimed invention is "[a] system for monitoring and transacting exempt securities or assets . . . comprising," among other things, "an asset access software module for providing transactional access to conduct at least one of bidding to buy, offering to sell and auctioning transactions in connection with the at least one exempt security or asset . . . being analyzed."  ('444 Patent, col. 20 l. 43 – col. 21 l. 27).  This purported invention—a system for monitoring and transacting in a particular asset by providing access to buyers, sellers, and auctions—describes not only contemporary commodity or stock exchanges, but also the long-established (indeed, ancient) practice of conducting business through a centralized marketplace.

This concept is not just "taught in any introductory finance class," it is one of the fundamental organizing ideas of such a course.  *Alice*, 573 U.S. at 221.  In fact, the ideas the

14

Supreme Court deemed too abstract to be patent-eligible in *Alice* and *Bilski*—hedging financial risk and intermediated settlement—are predicated on the even more basic idea that there is a marketplace in financial assets; that is, a place to go to obtain information concerning the market and to make trades.  This claim, like those claims, falls "squarely within the realm of 'abstract ideas.'"  *Id.*

The fact that the patent applies this idea to asset classes not traded on conventional exchanges does not alter its fundamental character as an exchange.  *See Ultramercial*, 772 F.3d at 715.  And the digital character of the claimed trading platform, including its implementation in software modules and through data memory and processors, does not change the calculus.  *See Alice*, 573 U.S. at 221.  At bottom, the patent is claiming the abstract idea of creating or operating an exchange for exempt securities or assets.

The Federal Circuit has "repeatedly held" that "collecting, analyzing, and displaying data" are "abstract concepts."  *CardioNet, LLC v. InfoBionic, Inc.*, 816 F. App'x 471, 475 (Fed. Cir. 2020) (citing *Electric Power Grp.,* 830 F.3d at 1353-54; *Content Extraction*, 776 F.3d at 1347).  The Federal Circuit has also specifically held that "a purportedly new arrangement of generic information that assists traders in processing information more quickly" does not transform an underlying abstract idea into a patent-eligible one.  *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019).

To the extent that any elements of Claim 1 are not functional components of a digital exchange, they relate to the display and analysis of trading information.  The claim describes software that gathers data ("collecting at least one of price data, valuation data, and market data related to the at least one exempt security or asset"); analyzes that data ("statistically analyzing at least one exempt security or asset . . . based upon a model selected by a user or a price data

15

source selected by the user from a price data database"); and shows the results ("providing the user inventory data of exempt securities or assets," "providing the user at least one of the price data, the valuation data," and "providing the user a result of the statistical analysis related to the at least one exempt security or asset"). ('444 Patent, col. 20 l. 50 – col. 21 l. 20). These "abstract concepts" do nothing to alter the abstract character of the underlying claimed invention—a digital exchange for certain types of assets. *See Electric Power*, 830 F.3d at 1353-54 (collecting cases). It does not recite "inventive technology for performing those functions." *Id.* at 1354; *see also Trading Techs.*, 921 F.3d at 1384-85 ("[T]he claimed steps for calculating the P&L values . . . is nothing more than mere automation of manual processes using generic computers, which does not constitute a patentable improvement in computer technology. . . . [T]he claims here fail because arranging information along an axis does not improve the functioning of the computer, make it operate more efficiently, or solve any technological problem." (internal quotation marks and citations omitted)); *CardioNet*, 816 Fed. App'x at 475 ("[T]he claims and specifications treat those steps as conventional processes, and therefore the claims cannot be said to require anything more than generic data analysis. . . . [M]erely displaying data by conventional methods as part of a series of abstract steps is itself an abstract concept.").

Accordingly, the Court finds that Claim 1 of the '444 patent is directed to the abstract concept of "monitoring and transacting in securities not listed on traditional exchanges"—that is, operating an exchange for non-exchange-traded assets.

### 2. Step Two: Inventive Concept

The Court must next examine the elements of Claim 1 to determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (internal quotation marks omitted). A court "consider[s] the

16

elements of each claim both individually and as an ordered combination." *Id.* at 217 (internal quotation marks omitted).  The inquiry searches for "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (internal quotation marks and alteration omitted). "An inventive concept reflects something more than the application of an abstract idea using 'well-understood, routine, and conventional activities previously known to the industry.'" *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (quoting *Aatrix Software*, 882 F.3d at 1128).  "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer*, 881 F.3d at 1368.

The complaint does not plausibly allege that the elements of Claim 1 of the '444 patent, when considered collectively, contain an inventive concept sufficient to transform the abstract idea into a patent-eligible application.  Step two of the *Alice* framework ordinarily involves factual questions that must be resolved in plaintiff's favor on a motion to dismiss under Rule 12(b)(6).  But here, the complaint makes no factual allegations at all about the patents in suit, other than that they exist.  (ECF 1).  Merely alleging that a patent was issued does not raise factual issues as to an inventive concept, because it does not identify "how the specific techniques recited in the claims [are] inventive." *Dropbox, Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (citing *Cellspin Soft,* 927 F.3d at 1317-18).  Accordingly, dismissal is appropriate unless Claim 1 of the '444 patent on its face contains an inventive concept.

Claim 1 appears only to arrange generic technological components to circumscribe the abstract idea of an exchange substitute for non-exchange-traded assets without yielding any technological benefits or industry improvements.  It invokes programs that match buyers and

17

sellers, conduct statistical analyses, choose price models, and search financial databases—all of which are all functions performed by generic computer components. Furthermore, merely invoking those programs does not purport to solve any of the technological or pragmatic problems associated with providing such services for bespoke and infrequently traded assets, such as syndicated loans. Without more—and the complaint alleges no more—the asserted claim fails to transform the abstract idea of "monitoring and transacting in securities not traded on a conventional exchange" into a "particular, practical application of that abstract idea." *Bascom Global Internet Servs., Inc. v. AT&T Mobility, LLC*, 827 F.3d at 1352.

GPE's infringement claim therefore fails as to Claim 1 of the '444 patent. And because that claim is properly treated as representative of the other asserted claims, the Court will grant the motion to dismiss for failure to state a claim as to all three counts.

### IV.   Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

**So Ordered.**

Dated: April 28, 2025

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court